**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**UNITED STATES OF AMERICA**

       - against -                    **09 Cr. 1015 (JGK)**

**KEVIN VENTURA,**                     **MEMORANDUM OPINION AND ORDER**

            **Defendant.**
------------------------------------

**JOHN G. KOELTL, District Judge:**

    On December 3, 2013, Defendant Kevin Ventura was convicted by a jury on all counts of a five-count indictment charging him with participation in three murders. After the verdict, the Court received a letter dated December 8, 2013, in which a juror expressed a personal fear for the juror's safety. The Court proposed to the parties that the Court send a letter to the juror assuring the juror that there was no reason to fear for the juror's safety. The defendant, however, has asked the Court to recall the juror and examine the juror as to whether, contrary to the juror's assurances during trial, the juror harbored any bias against the defendant or failed to accord the defendant the presumption of innocence to which the defendant was entitled. For the reasons explained below, the defendant's application for a post-verdict examination of the juror is denied.

I.

The defendant was charged in a five-count indictment with three counts of using, carrying, and possessing a firearm in connection with a marijuana distribution conspiracy and a federal crime of violence in violation of 18 U.S.C. §§ 924(j) & 2; with one substantive count of committing murder for hire in violation of 18 U.S.C. §§ 1958 and 2; and with one count of conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958.  On December 3, 2013, following a three-week jury trial, the defendant was convicted on all counts.

The government made no request for an anonymous jury, and during *voir dire*, all jurors were asked in open court and in the presence of the defendant to state their full names and give various information about their lives and backgrounds.  All jurors were asked whether they would accept that the defendant was presumed to be innocent and that the defendant could not be found guilty unless the jury unanimously decided that the evidence proved the defendant's guilt beyond a reasonable doubt.  All of the jurors agreed that they would accept these principles, and all of the jurors denied that they were biased against the defendant or the government.  At the end of the examination of each juror, and after the general nature of the charges had been described, each juror swore individually that

there was no reason that the juror could not be a fair and impartial juror.

On December 3, 2013, after approximately two days of deliberation, the foreperson delivered the jury's verdict in open court.  In accordance with the Court's practice, each of the jurors had personally signed the verdict form.  The Court then polled each of the twelve jurors individually and by name, and each juror affirmed the verdict.

On December 8, 2013, the Court received the following letter from one of the jurors:

> Dear Honorable Judge Koeltl:
>
> I recently sat as a juror . . . in the matter of <u>United States of America v. Kevin Ventura, 09 cr 1015 (JGK)</u>, commencing on Tuesday, November 12, 2013 through Tuesday, December 3, 2013.  Jury duty was a great learning experience for me, from crimes that people commit to how our judicial system works.
>
> I would like to bring up a particular aspect of my experience regarding the juror selection process that I did not completely understand, nor appreciate.  In your courtroom, 12B, there sat a number of potential jurors, nervously waiting to answer the questions on the <u>Individual Questions for Jurors</u> hand out.  This two-page document, with twenty-three questions, was quite comprehensive and provides a very clear picture of one's background, personal information (our names, where we live and work), experiences and interests.
>
> During this process, the defense lawyers, the defendant, along with the prosecution, were furiously taking notes as each potential juror responded.  I completely support that the defendant is innocent until proven guilty, along with the defendant being tried by a jury of his peers.  Where I

3

> am struggling is the fact that we were referred to by name, and that the defendant was allowed to hear and take notes to the responses of the <u>Individual Questions for Jurors</u>.
>
> If I am not mistaken, I do not recall that we were informed that the defendant was present prior to answering the questions.  My apologies if we were informed, however, most importantly, he was present during our responses.  In addition, after the verdict was read, and we needed to respond individually, we were referred to by name as opposed to by jury number.
>
> Now that the trial is over, I thank you for the experience, however, I have to say, I fear for my safety, and am continually looking over my shoulder.

(Juror Letter ¶¶ 1-5.)

On December 16, 2013, the Court held a conference with the parties to discuss this letter and the appropriate response. The Court provided a possible letter response to address the juror's concerns and invited the parties' views.[1] After the defendant asked to have the juror recalled for an examination, the Court asked the parties for letter briefs, which were subsequently provided.

## II.

The defendant argues that the juror's letter suggests that the juror was biased against him, that the juror improperly failed to disclose this bias during the *voir dire* process, and

---

[1] Following the filing of this Opinion, the Court intends to send a letter response to the juror assuring the juror of the parties' agreement that the juror is not in any danger.

4

that for these reasons the defendant is entitled to a hearing on whether the defendant was denied his right to a fair trial.  The government disputes that there is any valid basis for recalling the juror for a hearing on any of the matters discussed in the juror's letter.

A.

"One touchstone of a fair trial is an impartial trier of fact—a jury capable and willing to decide the case solely on the evidence before it.  *Voir dire* examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors."  McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)) (internal quotation marks omitted).  This process requires truthful answers by prospective jurors if it is to serve its intended purpose.  Id. Accordingly, in McDonough, the Supreme Court developed a two-step test for evaluating allegations that a juror has failed to respond truthfully to *voir dire* questions.  See id. at 556.

> First, a party alleging such a claim must demonstrate that a juror failed to answer honestly a material question on *voir dire*.  The failure to answer honestly must be deliberate; a juror's good faith failure to respond, though mistaken, does not satisfy even the first prong of the test.  Second, the party must further show that a correct

> response would have provided a valid basis for a challenge for cause.

United States v. Sattar, 395 F. Supp. 2d 66, 72 (S.D.N.Y. 2005) (quoting McDonough, 464 U.S. at 556; United States v. Shaoul, 41 F.3d 811, 815 (2d Cir. 1994)) (alteration and internal quotation marks omitted), aff'd, United States v. Stewart, 590 F.3d 93, 133-34 (2d Cir. 2009).  The McDonough test is an exacting hurdle because the ultimate purpose of the post-trial evidentiary hearing is to set aside a jury verdict, and motions to set aside a jury verdict are disfavored.  Sattar, 395 F. Supp. 2d at 72; see also United States v. Bangiyev, No. 07 Cr. 331, 2008 WL 4240005, at *7 (E.D.N.Y. Sept. 12, 2008) (citing United States v. Stewart, 433 F.3d 273, 303 (2d Cir. 2006)).

"[J]uror dishonesty is the central focus in the first prong of the McDonough test . . . ."  Perez v. Manhattan Jeep Eagle, No. 92 Civ. 9521, 1997 WL 403458, at *5 (S.D.N.Y. July 17, 1997) (citing Shaoul, 41 F.3d at 815).  Here, the defendant fails to satisfy this prong because he has asserted "no reasonable basis to conclude that [the juror's] responses under oath were not truthful."  Sattar, 395 F. Supp. 2d at 74.

The defendant argues that the discomfort expressed by the juror at having provided personal information to the defendant during *voir dire* suggests that the juror harbored bias against the defendant, deriving from the juror's fear of him, from the

6

outset of the trial.  But no fair reading of the juror's letter could support the proposition that the juror was biased.  Rather, the juror's letter reflects a retrospective concern for the juror's safety after the juror heard all of the evidence about the defendant's alleged involvement in three brutal murders (one of which was alleged to have occurred in the course of an arson), and after the juror had carefully deliberated concerning all of the evidence with the other jurors, and after the jury unanimously concluded beyond a reasonable doubt that the defendant was in fact guilty of the crimes charged.  The juror's letter, which was written after the jury had found the defendant guilty, unequivocally states that the juror "completely support[s] that the defendant is innocent until proven guilty."  (Juror Letter ¶ 3.)  Neither the letter itself nor anything in the defendant's submissions provides any basis other than pure speculation for disbelieving the juror's express affirmation that the defendant was presumed innocent until proven guilty, and speculation does not satisfy the first prong of the McDonough test.  See, e.g., Sattar, 395 F. Supp. 2d at 74 ("These allegations fail to meet the McDonough test because there is no evidence that Juror #82 deliberately answered any question dishonestly."); Olson v. Bradrick, 645 F. Supp. 645, 660-61 (D. Conn. 1986) ("A new trial motion grounded on pure

7

speculation that a juror possibly misrepresented himself on *voir dire* is without merit."); see also Clarkson Co. v. Shaheen, 660 F.2d 506, 514 (2d Cir. 1981) (affirming the denial of a motion for a new trial, or, in the alternative, for a post-verdict hearing, to address a question of possible juror dishonesty during *voir dire* because "the motion was based on pure speculation").

Because the defendant fails to satisfy the first prong of the McDonough test, it is unnecessary to reach the second prong. Accordingly, the defendant's allegation that the juror failed to respond honestly to questions posed during *voir dire* does not entitle him to a post-verdict hearing.[2]

---

[2] This conclusion is further supported by an additional factor. On November 14, 2013, the Court questioned each juror individually after there had been a disturbance in the courtroom during a recess. The inquiry was conducted individually in the robing room with counsel present. The Court asked all of the jurors—who had been in the juryroom at the time of the disturbance—what they had heard, whether they had discussed what they had heard with any other jurors, and whether anything about the incident might prevent them from being fair and impartial jurors in the case. All of the jurors denied that there was anything about the incident that would have prevented them from being fair and impartial. If, by the time of these individual conferences—which occurred after the parties had made their opening statements and the testimony had begun—the juror who wrote the letter believed that the juror could not be fair and impartial for any reason, the juror could have raised the concern with the Court, but no juror raised any such concern. Cf. Sattar, 395 F. Supp. 2d at 77 (noting that a juror's

B.

The defendant also argues that he is entitled to a post-verdict hearing under Second Circuit case law requiring a trial court to "hold a post-trial jury hearing . . . when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." United States v. Moon, 718 F.2d 1210, 1234 (2d Cir. 1983) (internal citation omitted); see also United States v. Ianniello, 866 F.2d 540, 543 (2d Cir. 1989).  According to the defendant, the juror's letter constitutes "clear, strong, substantial and incontrovertible evidence" of impropriety that requires investigation in a post-trial hearing.[3]

---

opportunity to communicate directly with the Court during trial undermines any post-trial allegations of impropriety).

[3] The defendant argues that the rule set forth in Moon and Ianniello provides an independent basis for a post-verdict hearing, separate and apart from the claim made pursuant to McDonough.  The government disagrees, arguing that the defendant's motion for a post-verdict inquiry into juror bias amounts to nothing more than a claim that the juror misrepresented the juror's bias against the defendant during *voir dire* under McDonough.  There is no occasion in this case to assess whether a motion for a post-verdict hearing based on allegations of juror bias can amount to anything more than a claim under McDonough, because the defendant has failed to meet the exacting standard set forth in Moon and Ianniello.  Cf. Perez, 1997 WL 403458, at *4-6 (addressing allegations of juror bias under the McDonough test, finding that the defendant had

The Second Circuit Court of Appeals has cautioned that courts should be "reluctant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences." Ianniello, 866 F.2d at 543 (citation omitted).  This is because "post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts." Id. (citation omitted).  Thus, a defendant should not be allowed to investigate jurors "merely to conduct a fishing expedition." Id. (citation omitted).  This is the rationale for the exacting standard governing post-trial hearings set forth by the Court of Appeals: a post-trial jury hearing must be held only when a party comes forward with "clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred." Id. (alteration in original) (citation omitted).

Cases granting post-trial hearings on the basis of evidence of impropriety tend to involve allegations of improper outside

---

failed to satisfy prong one of that test, and holding additionally that the defendant had not satisfied the exacting standard for entitlement to a post-verdict hearing under Moon and Ianniello).

influence on the jury. See, e.g., United States v. Schwarz, 283 F.3d 76, 98 (2d Cir. 2002) ("The three affidavits in this case contained clear and specific allegations of inappropriate exposure to extrinsic information, allegations that were plainly sufficient to satisfy the requirement of strong, substantial and incontrovertible evidence." (quoting Ianniello, 866 F.2d at 543) (internal quotation marks omitted)); Ianniello, 866 F.2d at 543 ("[A]ffidavits of three jurors alleging specific acts of inappropriate conduct by the district judge and a federal marshal responsible for the jury satisfy the standard [for a post-verdict inquiry]."). In this case, there are no allegations of improper intra-jury communication or outside influence.[4]

---

[4] Indeed, the operation of Rule 606(b) of the Federal Rules of Evidence—which generally bars admission of evidence relating to jurors' mental processes, except to the extent that they were affected by outside influence, see Fed. R. Evid. 606(b)—may render any investigation into juror bias futile, absent some evidence of outside influence or extraneous prejudicial information. See United States v. Riley, No. 06 Cr. 80, 2008 WL 2875432, at *3 (S.D.N.Y. July 16, 2008) ("In any event, [the defendant's] proposed investigation [pursuant to Ianniello] would be futile[, because a]n inquiry into the ultimate question of the jurors' emotions, state of mind, or deliberations is facially prohibited by Fed. R. Evid. 606(b)."); United States v. Casiano, No. 05 Cr. 195, 2007 WL 1692125, at *3 (D. Conn. June 7, 2007) (noting that Rule 606(b) "[r]eflect[s] the limited grounds for inquiry into the validity of a verdict" that have been expressed in the federal courts' longstanding aversion to holding post-verdict hearings); United States v.

To the extent that allegations of bias alone, without evidence of extraneous influence, can ever warrant a post-trial hearing, the basis for the defendant's allegations in this case falls short of the high standard prescribed by the Court of Appeals in <u>Ianniello</u> and related cases, and therefore does not warrant a post-verdict inquiry into juror bias.  All that the defendant has pointed to is the juror's expression of personal fear—"[n]ow that the trial is over"—for the juror's safety given that the defendant is in possession of information identifying the juror.  Indeed, courts routinely deny motions for post-verdict inquiries based on allegations more serious and much less speculative than those involved here.  See, e.g., <u>United States v. Ionia Mgmt. S.A.</u>, 526 F. Supp. 2d 319, 331-32 (D. Conn. 2007) (denying a motion for a post-verdict inquiry into juror bias based on a letter from a juror to the government congratulating the government on its victory at trial); <u>United States v. Casiano</u>, 2007 WL 1692125, at *2-4 (denying a motion for a post-verdict inquiry based on a letter from a juror

---

<u>Kopp</u>, No. 00 Cr. 189A, 2007 WL 1593058, at *4 (W.D.N.Y. May 23, 2007) ("[T]here is no claim of external influence on the jury. Thus, no further inquiry into the verdict is permitted [under Rule 606(b)]."). Here, the defendant fails to explain what purpose a post-verdict hearing would serve, given that Rule 606(b) makes any inquiry into the juror's mental processes inadmissible.

expressing regret at the verdict reached and doubt as to the sufficiency of the government's evidence); Sattar, 395 F. Supp. 2d at 74, 76-77 (collecting cases).

Moreover, there are independent reasons to discount any argument that the juror's letter indicates bias.  First, the juror specifically affirmed that the juror completely supported that the defendant was innocent until proven guilty.

Moreover, the juror had ample opportunity to bring any concerns about bias or impropriety to the attention of the Court during trial, and yet at no point did the juror mention any fear of the defendant or give any indication that the juror could no longer abide by the presumption of innocence.  The juror could have done so during the juror's individual conference with the Court on November 14, 2013, following a disturbance in the courtroom, as well as during the individual polling of the juror after the foreperson read the jury's verdict.  Courts have viewed jurors' failure to avail themselves of opportunities to voice concerns to the court during trial as casting doubt on the need for post-verdict inquiries following post-verdict allegations of impropriety.  See, e.g., United States v. Stewart, 590 F.3d 93, 133-34 (2d Cir. 2009); Jacobson v. Henderson, 765 F.2d 12, 15 (2d Cir. 1985).  The lack of any complaints by the juror prior to conclusion of the trial

13

strongly supports the conclusion that this juror's fear has arisen only, as the juror puts it, "[n]ow that the trial is over." Accordingly, the contents of the letter provide no support for a post-verdict inquiry into bias during trial.

Therefore, the defendant has failed to proffer "clear, strong, substantial and incontrovertible evidence" of impropriety, and he is not entitled to a post-verdict hearing on juror bias.[5]

---

[5] The defendant argues that the concerns motivating the exacting standard in Ianniello—namely, the "evil consequences" of "subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts," Ianniello, 866 F.2d at 543—are not implicated here, because the contact at issue was juror-initiated. However, an inquiry into possible bias is plainly not what the juror expected to trigger in writing the letter; it would therefore clearly be wrong to assume that the juror would not be burdened by such a post-verdict hearing. Moreover, as the government correctly points out, the concerns motivating the rule expressed in Ianniello are for preserving the integrity and efficiency of the jury system *as a whole*, which would indeed be compromised if courts granted applications for post-verdict inquiries based on allegations such as those in this case.

14

CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the foregoing reasons, the defendant's motion for a post-verdict hearing is **denied**.

**Dated:**     **New York, New York**
          **January 21, 2014**          _____/s/_____
                                    **John G. Koeltl**
                             **United States District Judge**